# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**HERITAGE HUNTER KNOLL, LLC**                                                    **PLAINTIFFS**

**V.**                                                            **CIVIL ACTION NO. 2:19-cv-15-KS-MTP**

**LAMAR COUNTY, MISSISSIPPI; BOARD
OF SUPERVISORS OF LAMAR COUNTY,
MISSISSIPPI; STEVE LAMPTON, WARREN
BYRD, PHILLIP CARLISLE, individually and in their
official capacities as Supervisors of Lamar
County, Mississippi, and JOE BOUNDS,
and DALE LUCAS in their
official capacities as Supervisors of Lamar
County, Mississippi**                                          **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This cause came before the Court on Defendants' Motion for Judgment on the Pleadings as to Federal Claims [10]. Plaintiff filed a Response [20], and Defendants have filed a Reply [25]. Having reviewed the parties' submissions and the relevant legal authority, the Court finds the motion will be denied for the reasons set forth below.

## I. BACKGROUND

This case arises from the Lamar County Board of Supervisors' amendment to Lamar County's Unauthorized Dumping and Litter Ordinance, which amendment discontinued waste collection and disposal services for all multi-family properties in Lamar County, Mississippi and required property owners to privately contract for replacement services. Plaintiff is a limited liability company that owns several multi-family residential properties and regularly enters into lease contracts with tenants who are predominantly minorities. Plaintiff contends that members of the Board of Supervisors amended the Ordinance based on discriminatory animus, which allegedly infringes not only on Plaintiff's own constitutional rights but also those of its tenants. Plaintiff seeks to recover damages for violations of 42 U.S.C. §§ 1981, 1981, 1983 (Due Process and Equal

Protection), and 3613 (Fair Housing Act or "FHA"); and several state statutes. At issue in this motion are the federal claims only.

## II. DISCUSSION

### A. Relevant Legal Standard

Defendants bring this action as a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (quoting *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). The Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* The Court is generally limited to the contents of the complaint and any attachments thereto. *Bosarge v. MS Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015).

### B. Analysis

Defendant brings this motion based on two grounds: lack of standing and qualified immunity for the individual Defendants, arguing that Plaintiff has failed to comply with the heightened pleading standard to overcome qualified immunity. The Court will address each ground separately.

#### 1. Standing

As the Fifth Circuit has explained:

> Every party that comes before a federal court must establish that it has standing to pursue its claims. . . . The Supreme court has described standing as "contain[ing] two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement; and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." . . . Even if a plaintiff establishes Article III standing, we may consider whether prudential standing

> principals nonetheless counsel against hearing the plaintiff's claims. . . . [A]s the Supreme Court has observed, prudential standing: "[E]ncompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'"

*Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473-474 (5th Cir. 2013) (internal citations omitted). Defendants do not appear to take issue with Plaintiff's Article III standing, but rather argue on each claim that Plaintiff does not have standing to vindicate the rights of third parties, namely its tenants.

### a. Section 1981, 1982 and FHA claims

Defendants claim that Plaintiff lacks standing to vindicate the rights of third parties, namely its minority tenants. Defendants argue that because Plaintiff is a limited liability company and not a person who might be considered a member of a protected class, Plaintiff lacks standing to bring a Section 1981 claim, and it cannot recover for injury to third parties based on their protected classification when plaintiff does not belong to that class. However, the two cases cited by Defendants to support their argument simply do not establish that Defendants are entitled to judgment as a matter of law on this issue due to Plaintiff's failure to state a proper claim.[1] [11] at p. 6.[2]

Defendants overlook and fail to address cases more akin to this one, which are cited by Plaintiff and support its position that there is standing here. Plaintiff relies on *Sullivan v. Little Hunting Park*, 396 U.S. 229 (1969) in which the Supreme Court held that a white

---

[1] Defendants rely on *Blanks v. Lockheed Martin Corp.*, 568 F. Supp. 2d 740 (S.D. Miss. 2007) and *Equal Employment Opportunity Comm'n, v. Miss. College*, 626 F. 2d 477 (5th Cir. 1980). However, aside from Defendant's failing to provide any analysis of these cases, both are readily distinguishable. *Blanks* is a district court case involving a claim for emotional distress following a white racist's shooting rampage, which involves many issues simply not at issue here, and the *EEOC* case is one involving Title VII claims and employment practices, again which are not at issue here.

[2] Defendants failed to adequately brief the corporate entity issue, and thus, the Court will not address the fact that Plaintiff is a limited liability company in this context.

3

landowner/lessor had standing to recover both monetary damages and equitable remedies under Sections 1981 and 1982 when the corporation that ran the community's recreation facilities refused to approve an assignment of Sullivan's membership share in the facilities to his lessee because the lessee was black. The Court finds that the *Sullivan* case, along with others, establish that Plaintiff indeed has standing to bring claims under 42 U.S.C. §§ 1981 and 1982 and assert that it has been damaged due to discrimination against others. *See, e.g., Hodge v. Seiler*, 558 F.2d 284, 287-288 (5th Cir. 1977) (white wife with a black husband able to state a claim under Section 1982 when apartment complex refused to rent to them due to racial discrimination against husband); *Pomeroy v. Merritt Plaza Nursing Home, Inc.*, 760 F.2d 654, 657 (5th Cir. 1985) (white tenant able to recover under Section 1981, 1982 and 1985 for eviction based on racial prejudice not because of her race but due to her friendships with non-whites); *Des Vergnes v. Seeknok Water Dist.*, 601 F.2d 9 (1st Cir. 1979) (holding that corporation with no racial identity had standing to sue under Section 1981 because a "person has an implied right of action against any other person who, with a racially discriminatory intent, interferes with his right to make contracts with non-whites"); *Cf. McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286-287 (1976) (holding that Section 1981 is applicable to "all persons," including whites).[3] Based on these cases and others cited within these cases, the Court finds that there are no prudential limitations to Plaintiff's standing to pursue its claims under Sections 1981 and 1982.

As for standing under the Fair Housing Act, Defendants argue only that Plaintiff fails to plead that it is an "aggrieved person," and, as such, lacks standing. [11] at p. 15. However,

---

[3] As to Section 1982 in particular, Defendants cite to *Singleton v. Wulff*, 428 U.S. 106 (1976) for two principles that relate to the rule against third party standing. That case involved the right of doctors to assert the rights of their patients, particularly with regard to the right to choose an abortion. The analysis in this case is completely different. There are different constitutional rights at issue, and in this case, it appears after reviewing Plaintiff's response that the many of Plaintiffs' claims assert that Plaintiff's own constitutional and statutory rights were infringed *because of* the alleged racial animus of the board. Plaintiff is not asserting a racial discrimination claim in its tenants' stead and does not seek to recover for injuries to the tenants, whatever those may be.

"[t]he FHA permits *any* 'aggrieved person' to bring a housing-discrimination lawsuit. 42 U.S.C. § 3613(a) (emphasis added). The statute defines 'aggrieved person' as 'any person who' either 'claims to have been injured by a discriminatory housing practice' or believes that such an injury 'is about to occur.'" *Bank of Am. Corp. v. City of Miami,* 137 S. Ct. 1296, 1303, 197 L. Ed. 2d 678 (2017) (finding that the City of Miami was an aggrieved person with standing to sue). The Supreme Court has stated that such a definition reflects a congressional intent to confer standing broadly. *Id.* Plaintiff need not recite the specific words "aggrieved person." Plaintiff is in a position similar to other plaintiffs whom courts have held had standing under the FHA despite not being a member of a protected class. *See, e.g., United States v. Dawn Props., Inc.*, 2015 WL 13451019, at *3 (S.D. Miss. Oct. 9, 2015); *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1282 (3d Cir. 1993); *Baytree of Inverrary Realty Partners v. City of Lauderhill*, 873 F.2d 1407, 1409 (11th Cir. 1989).

There are no prudential limitations on standing under the FHA; that is, the sole requirement for standing under the FHA is that there be Article III standing: (1) injury in fact; (2) that is fairly traceable to a defendant's conduct; and (3) that is likely to be redressed by a favorable judicial decision. *See Lincoln v. Case*, 340 F.3d 283, 289 (5th Cir. 2003) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372, (1982) which stated that "the sole requirement for standing to sue under [the FHA] is the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury,'" citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Plaintiff alleges it has suffered economic injury traceable to the passing of the amendment to the local ordinance that would be addressed by a favorable decision, either by injunction or monetary damages. Thus, the Court finds that Plaintiff has standing to bring its cause of action under the FHA.

**b. Section 1983 Claims (Due process and Equal protection)**

As for Section 1983 due process and equal protection claims, Defendants initially argue that Plaintiff is again seeking to assert a third-party claim. However, the Amended Complaint at Paragraphs 17 and 26 along with Plaintiff's response makes clear that Plaintiff is also asserting an alleged violation of its own due process rights under the 14th Amendment through the vehicle of a Section 1983 action. [5]; [20] at p. 5. Plaintiff clearly has standing to assert its own constitutional rights. As for any argument beyond that issue—such as whether there is a property right in garbage collection and whether Plaintiff had notice prior to the amendment being adopted—those are best left for another day, as they have not been timely raised and there has not been adequate briefing.[4]

As for an equal protection claim, again, there are several cases more on point than those cited by Defendants. In their reply Defendants rely on *Inclusive Communities Project, Inc. v. Texas Dep't of Housing and Community Affairs*, 2008 WL 5191935 (N.D. Tex. 2008), which recited a test from the case of *Singleton v. Wulff*, a case the Court already addressed as being readily distinguishable. *See* n. 3, *supra*. Cases from the Fifth Circuit as well as other circuits are more on point and support the fact that Plaintiff has standing to bring an equal protection action. *See*, *e.g.*, *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027 (11th Cir. 2008) (holding that owner/lessee had standing to bring equal protection claim on behalf of itself and its tenants

---

[4] Plaintiff claims in its response that it has a property interest in garbage collection pursuant to Mississippi Code Section 19-5-17. In their Reply, Defendants claim there is no property interest in continued garbage collection because the statute allows the supervisors to designate by order "the area" to be served. Defendants did not raise this argument as initial grounds, and the Court finds this issue is inadequately briefed to conclude as a matter of law at this stage that Plaintiff cannot state a claim for a due process violation on the basis that there is no protected interest. Likewise, in their Reply, Defendants argue that there was no lack of notice because the meeting agenda for the July 2, 2018 meeting was published. Again, there is simply inadequate briefing on the matter, and because this was not an original basis for arguing for judgment on the pleadings, see [10], the Court declines to address it at this time. This argument is not timely raised, and the Court will not address it. *Pipkins v. Stewart*, No. 5:15-CV-2722, 2019 WL 1442218, at *12 (W.D. La. Apr. 1, 2019) (citing *Cavazos v. JP Morgan Chase Bank Nat'l Ass'n,* 388 F. App'x 398, 399 (5th Cir. 2010)).

against building officials whose actions were allegedly an attempt to drive away a growing population of Hispanic immigrant residents); *Scott v. Greenville County*, 716 F.2d 1409 (4th Cir. 1983) (holding that developer, who was seeking to construct multi-family low income housing complex, had standing to sue for civil rights violations for improper withholding of building permit allegedly motivated by a racially discriminatory intent to prevent him from building housing and renting to members of racial minorities); *Crow v. Brown*, 457 F.2d 788 (5th Cir. 1972) (finding landowner's petition for injunction proper wherein it sought to enjoin a county policy that prevented construction of low-income housing for blacks beyond city limits).

Defendants argue there must be some sort of close, familial, or representative relationship between the Plaintiff and the third parties. However, the three cases mentioned above make clear that such is not necessarily the case. Again, this case is not like the case of *Inclusive Communities Project*, *supra*, where there was no assertion of damages or injury specifically to the plaintiff who was suing in a true representative capacity. In that case, the plaintiff, a non-profit who helps low-income families secure Section 8 housing in predominantly Caucasian suburbs, sought only injunctive relief against a state agency that administered a federal program that promotes investment in low-income housing developments by providing tax credits. 2008 WL 5191935 at *1. There, the non-profit claimed that the state agency's consideration of race in allocating tax credits violated the FHA, equal protection, and Section 1982. Id. at *2. Without any "injury-in-fact" the agency argued there was no standing. *Id*. However, the court found that indeed there was, finding that the non-profit was an integral part of its clients' exercise of their housing-related rights and that the non-profit would be effective in advocating its clients rights. *Id*. at *7.

The considerations in that case were quite different than those here. In this case, Plaintiff is not attempting to sue in a truly representative capacity. Plaintiff plainly asserts its own injuries

7

and damages, namely in loss of rental revenue and increased costs to contract for waste removal. Thus, the *Inclusive Communities Project* is not helpful in resolving the issue of standing in this case. Based on the three aforementioned cases of *Young, Scott*, and *Crow*, the Court finds that Plaintiff has standing to pursue its Section 1983 claims.

### 2. Qualified Immunity

On each of the claims, Defendants do not present the Court with substantive qualified immunity arguments.[5] Rather they argue that Plaintiff has failed to meet the heightened pleading requirements and failed to provide sufficient substantive allegations as to the particular actions of each of the individual capacity Defendants and ask the Court to either dismiss the claims or order that the Plaintiff file a *Schultea* Reply.[6] Upon review of the Amended Complaint, the Court finds the allegations sufficient as to the claims against the individual Defendants such that a *Schultea* Reply is not necessary.[7]

In particular as to the FHA claim, Defendants also urge that the Amended Complaint fails to allege sufficient facts supporting a discriminatory housing practice insomuch as the County was not engaged in renting or selling a dwelling to Plaintiff. [11] at p. 15. This is not a qualified immunity argument, but merely a failure to state a claim argument. Regardless, Defendants cite no legal authority for their position. As discussed in the preceding section on standing, under the FHA, Plaintiff need not have been the target of discrimination. Furthermore,

---

[5] Plaintiff argued in response that the Defendants have failed to carry their initial burden of establishing that the challenged conduct was within the scope of his discretionary authority. [20] at p. 16. The Court agrees. Plaintiff, however, goes on to make an argument, assuming arguendo that Defendants carried that burden. The Defendants have not raised substantive qualified immunity arguments, and thus, the Court will not engage in an analysis of an argument not at issue before the Court.

[6] *See Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995). Also, Defendants initially argued that the claims against Defendants Bounds and Lucas must be dismissed as there has been no allegations of discriminatory animus regarding them. However, that appears to now be cleared up, as those two Defendants are not sued in their individual capacities. In their Reply Defendants argue that the individually named Defendants are entitled to absolute immunity. An issue not raised in its initial motion, and thus, the Court will not entertain such argument raised for the first time in rebuttal.

[7] In its Reply, as to the due process claim, the Defendants argue that Plaintiffs *were* provided notice. [25] at p. 3. This was not one of the initial grounds raised, and the Court finds this factual issue is not ripe for a Motion for Judgment on the Pleadings, particularly given that the Defendants rely on documents outside of the pleadings.

the FHA's provisions are not limited to simply renting or selling housing, but discrimination as to the "terms, conditions, or privileges of a sale or rental of a dwelling, *or in the provision of services or facilities in connection therewith*, because of race, color, . . . or national origin." 42 U.S.C. 3604(b). In its Reply, Defendants argue that even if Plaintiff were proceeding under such section, the amended ordinance does not "deny services"—it merely provides that Plaintiff pick up the tab for the privatization of said services for its tenants. [25] at p. 8. Such briefing is clearly inadequate to allow the Court to rule at this stage as a matter of law that Plaintiff has failed to state a claim.

A violation of the FHA can be proven either by a discriminatory intent (disparate treatment) or a disparate impact theory. *See Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996). Taking all allegations as true, as the Court must, Plaintiff has alleged that under Mississippi law, Defendants are required to provide for the collection and disposal of waste in Lamar County; that the costs of providing such services may be defrayed through ad valorem tax assessments, and Plaintiff has paid said assessments. [5] at ¶ 15. Plaintiff further alleges that prior to July 2018, Defendants provided solid waste collection and disposal services without regard to whether residents lived in single-family or multi-family residences. *Id.* at ¶ 16. The tenants in Plaintiff's multi-family residences are primarily racial minorities. *Id.* at ¶ 14. In early January 2019, an amendment to the local ordinance went into effect, discontinuing those services for multifamily residential properties. *Id.* at ¶ 21. Plaintiff alleges that the stated purpose of the amendment was to address the Hispanics in the area and also that the amendment has disproportionately deprived racial minorities of the provision of these services. *Id.* at ¶¶ 19, 22. Until proven to the contrary based on applicable legal authority, the Court finds Plaintiff's allegations sufficient to state a claim under the FHA under both a discriminatory intent (disparate treatment) and a disparate impact theory.

9

Finally, in its Reply, the individual Defendants raise the issue of "absolute immunity," an issue not raised in its original motion but possibly applicable. The Court declines to rule at this time but will grant the Plaintiff leave to address the absolute immunity argument contained in Doc. No. 25 at pages 8-9.

## III. CONCLUSION

Based on the foregoing, it is hereby ORDERED that the Defendants' Motion for Judgment on the Pleadings as to Federal Claims is denied on the issue of standing and denied on the issue of qualified immunity as to the sufficiency of the pleadings without prejudice to raising the issue by way of summary judgment should facts obtained in discovery so warrant. As to the issue of absolute immunity, the issue shall remain under advisement. Plaintiff is given leave to respond the individual Defendants' argument, **with said response due no later than fifteen (15) days from the date of this Order.**

SO ORDERED and ADJUDGED this 19th day of August 2019.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE